Good morning. May it please the court. I'm Chrissy DeMosso and I represent the appellant John Fleury. I'd like to reserve two minutes for rebuttal. You may. A magistrate judge considering a warrant application has a critical role to play in ensuring that warrants only issue based on probable cause. This is what Franks called the bulwark of Fourth Amendment protection. To perform this function, magistrate judges rely on the affiant to provide candid information and sufficient information for the magistrate judge to make a quote independent evaluation of whether or not there's probable cause. That language is from Franks. The affidavit in this case, which was written by a 12-year veteran of the ATF, contains a pattern of reckless misstatements and omissions. Taking a broad view of the case, stepping back and looking at the application as written, it's clear that the picture conveyed by the application is much different than reality. And the magistrate judge in this case was a proper probable cause determination based on the correct version of the material facts. Didn't the police confirm a lot of the information in the affidavit, apart from the fact that they heard from the CIA? I mean, didn't they confirm that? They did not confirm. What they confirmed were what I would call innocent facts. The they believed to be corroborations. The bulk of it is things about the confidential informant's own criminal activities. Things that it's not surprising that he knows. The things that they're able to confirm about Mr. Fleury are things like where he lives, what his girlfriend's name is. They're unable to confirm any of the critical information, the critical information being the confidential informant says he saw Mr. Fleury with a gun on April 25th. That meeting was unmonitored. They don't know for sure whether the confidential informant went there. And critically, there's a gap, a large gap in time for when the confidential informant reports that meeting. Prior to April 22nd, the confidential informant is in fairly regular communication with the agents. They talk frequently. Not every day, but pretty frequently. After April 22nd, communication drops off. Did they confirm, for example, the stealing of the gun from a residence? So that gun is a separate weapon and that involves the confidential informant. So what happens in this case is the confidential informant, they meet him because they come to him and they say, we've got a picture of you committing this robbery and puberty. There's a report that a gun was stolen. The confidential informant says to that, and he says, here's where you'll find my jacket. They're able to confirm that the confidential informant knows where he left his own jacket. But what they're not able to confirm are any details showing that Fleury, that the information about Fleury, that Fleury had any allegedly criminal behavior going on. They confirmed their cell phone numbers, didn't they? They did. I argue that those are the type of innocent details that, you know, so he knows Fleury. So he knows Mr. LaFrada. He knows these people. But that's not information that shows or confirms or corroborates that Mr. Fleury was engaging in any criminal behavior or even the specific criminal behavior at issue here. There's an audio recording of April 21st, is that correct? Which Mr. Fleury is heard on that audio referring to a gun that he's left behind at his residence. He's very concerned that his girlfriend is going to discover that. Isn't that, I mean, that doesn't depend, I mean, that's Mr. Fleury himself acknowledging the gun. That doesn't depend on anything that the CI says to them, isn't that correct? I don't think that the, that recording standing alone is sufficient. Particularly because if it's the recording standing alone, that really highlights the nexus and stainless problems that arise from the information that the agent left out about that meeting. Is that your only reason for why the recording doesn't? I do think that it is. What is the connection between the facts you want to suggest that were omitted that casts  I do think that the recording, it is important to keep it in context. You know, that is this tape that the CI has gone out and sort of, you know, he does ultimately get permission to use the recording device, but it's sort of gone out and created on his own. And the recording is lengthy, there are many parts that are offensive, it does go on and on and on. And there's this one isolated little reference to a gun. And if you're going to give as much creams to that as to be able to support the entire warrant, I think you really need to look at the entire conversation. And that's where you get into the fact that there's a serious problem going on with Mr. Flurry and his girlfriend. And you see that he is moving. It's not just that he's... I just want to stick on this point. Is the sole reason that the recording does not suffice to establish probable cause on your view, because since what was omitted is the possibility that he's moving, the recording is just showing a potentially stale fact? I think that's the main reason that... Well, could you just elaborate for me? Suppose I thought the recording is not showing a stale fact. Why would it matter if the other statements about the CI that were omitted cast some doubt under the liability of the CI, given the recording? Because I think that you do, you know, this is about, you can't take things in isolation. You know, the magistrate judge... Well, then why not? Because the magistrate judge needs to be able to make this overall determination. Suppose, for instance, I have a recording saying that there's a gun, and suppose we conclude that's not stale, so there's a nexus. What does it matter if there are some reasons to doubt other statements regarding the CI? The CI is not the source of the recording. Well, the CI does generally... I mean, I know the CI is not the source of those statements, but he is the source of the recording. I understand, but he's not the source of those statements, so I'm still trying to figure out what does it matter? I think that it just, it puts the entire relationship among all these people into context. Sort of what's going on, what they're talking about, why they're talking about it, why this conversation is even taking place. I do think that it matters that, you know, this is at the behest of law enforcement, and that he is trying to get information, and that there's a lot, a lot of talk. You know, in the district court, both sides at various points argued that various parts of that conversation were puffery, you know, for various reasons, and I do think that that context is highly relevant. So, in your position, the magistrate judge hearing that audio recording, where Fleury himself refers to a gun, and I think there may be references to ammunition as well, and there is information about the address, they've confirmed that he resides at a particular address. You don't think that alone, putting aside all the problems you've argued with the CI, that's not enough to establish probable cause for the issuance of the warrant? I don't think in the context of this case. I think particularly, Your Honor spoke about, you know, they've confirmed his address. Well, but that's where the problem with, do they really know that he's living there? I mean, you hear him speaking to his mother, who wants him to move. He's talking about... So can I ask you about, those go to the staleness, right, of the point, and I get that argument. If, when I was looking at the motions, if I follow it, the motions only reference one fact that was omitted with respect to staleness. They don't mention, if I'm reading it right, they don't mention the mother, they don't mention the moving of the picture. The motions in making the staleness argument seem to only mention the statement that Frada, I think it's Frada, made about you should leave. I believe, if I may finish. Yeah. I believe that the motions did talk about the context, the full context of his fight with his girlfriend, but that's left out. But there is, I do believe that it... Did they mention, did your motions mention that the mother was suggesting that he should leave, and that he had moved the picture? I do believe that the moving the picture is in there. It is also, you know, you look at... Can you rely on appeal on a fact that wasn't raised in the motion? You mean below? I believe it was raised below. No, but if it wasn't, then you would agree that we can't include that in our consideration now of whether the district court erred in concluding that there was no Frank's problem. I do think that reviewing the entire situation de novo, especially where these facts about and the entire recording was introduced below, I do believe that this court can look at everything underlying. The claim was raised, the legal claim, and I do believe that reviewing de novo, you can look at all those facts. Thank you. Mr. Quinlivan, good morning. Good morning. Judge Schor, if I may please the court. Mark Quinlivan on behalf of the United States. I just want to begin by taking a step back, because I believe this case comes to this case with a different posture than the normal Frank's inquiry. Typically, or at least in my experience, the question is whether the district court erred in denying a request for a Frank's hearing. In this case, however, the district court, out of an abundance of caution, afforded the defendant the opportunity to have a Frank's hearing. The district court heard testimony from the agent over the course of three days, and I think that indicates the judge had more than an ample opportunity to gauge his credibility. And at the conclusion of the hearing, the court found that there had been no deliberate misstatements or reckless omissions from the affidavit. Counsel, how is the agent's credibility implicated in any of the issues that your opponent relies upon to argue that the warrant should not have issued? For example, the question about whether there was adequate disclosure of his full criminal record, that doesn't turn on the credibility of the agent. The issue about whether there was adequate disclosure of drug use, that doesn't depend on credibility. And the use of the language in the past, whether that was deceptive, that doesn't depend on the credibility of the agent. So why do we need to invoke the credibility of the agent in defending the decision of the district court judge? I respectfully disagree on at least the first two points, Judge Lopez, because, for example, let's talk about the drug use. What the agent testified to was that at the time he submitted the affidavit on May 9th, 2014, he did not believe that the CW was using any drugs other than Suboxone. And the district court said that she credited that testimony. She also said with respect... But Suboxone, that's an illegal drug, is it not? It's the kind of drug use which the agent actually said to the CI, if you want a drug, you're not going to be an informant for us here. I mean, that is something to be worried about. And he told the CI that would be problematic if he's using drugs like that. It would be. And just to clarify the point about Suboxone, it's a prescription medication. It is illegal to use if you're not using it through the proper means. And I believe that, in fact, was the case. But Suboxone also is something that is used to sort of deal with opioid addiction. So it's consistent with the use of Suboxone, in a sense, is consistent with somebody who is trying to not use drugs. And so, in total, I think that she is able to assess that when he made that statement, was he trying to hide something from the magistrate judge or give his best assessment of what he knew at the time. And the same goes with respect to the criminal history. What he testified was that he identified what he thought were the most significant of the defendant's crimes. Now, you can quibble back and forth about, well, But at the end of the day, the magistrate judge knew that this was an individual who had told the agent he had sold and used drugs and had a number of criminal convictions spanning all kinds of different. What was identified was breaking and entering in the nighttime, larceny over $250, assault and battery with a dangerous weapon, gross and open rudeness. I think the disparate nature of those crimes itself gives a fair indication that this is somebody who has had problems with law enforcement. Now, Judge Lopez, with respect to the last one about the, I would agree on your last point on the juxtaposition of he's provided useful information in the past and then following it up two sentences later and saying he's provided information during this investigation. But isn't the reference in the past, isn't that simply untruthful? No. And claiming the argument that in the past, given the way that's used routinely in these kind of affidavits, suggests in a prior investigation, not as part of this investigation. And it appears that's how the magistrate judge initially understood that reference, the suggestion that on other occasions, with other investigations, he had provided reliable information. And that is simply not the case. Isn't that true? It is true. And I acknowledge that this was, there's no question, this could have been drafted better. I think, though, that the question becomes was, is the only possible way you can read that juxtaposition that he was, that the agent was deliberately trying to mislead the magistrate judge? That would be entitled the defendant to relief under Franks. Or that, for example, oftentimes affidavits are drafted with a more general statement, such as he's provided information in the past, and then a more specific statement about the information that's been corroborated. In this case, it's true that juxtaposition can be read as suggesting that these were entirely two different tracks. You don't need us to conclude that the affidavit was not misleading in World Freedom Land. That's right. Right. So the credibility issue may be relevant to the threshold determination that it was misleading, but it can be relevant to the subsequent determination of if he provided only the facts, and it was the probable cause. That's right. So with respect to the second question, one way that you suggest you could read it is because there's a recording that has Flurry saying, there's a gun in my house. And since the warrant says we're trying to show there's a probable cause there's a gun in the house, that seems like fairly good evidence. The defendant comes back and says, yeah, but that's stale. And all you have supporting that it's not stale is a general representation by the officer saying people generally keep guns for a long time. And they suggest the affidavit is misleading because even if that were true in the general case, facts were omitted here that made this a specific case in which there'd be reason to doubt the gun would still be there.  I think what's wrong with that argument is that the facts that, I don't think the facts that they say that were supposedly omitted bear the interpretation that they bring to them. They point specifically to Lafreda saying that, get that out of here, suggesting that he, first off that he's the boss of the ring, and secondly that he's instructing the CW or Flurry to take the gun out of the house. Now that's wrong because as we point out in our brief, the fact that Lafreda was the mastermind of the Peabody home invasion doesn't suggest that he was in any sense the boss. In fact, after the Peabody home invasion occurred, Lafreda purchased the gun from the CW, and that suggests at most that he was a co-equal in the crime. But as we also point out, when that statement is made, take that out of there, the context is important because what Flurry says is, I left the gun in my house. He then mentions his girlfriend and the fact that they have a volatile relationship, and then he says, but don't worry, I took the clip and then I brought it to my buddy's house. And it's then when Lafreda says, get that out of there. So I think from the context of the statements just on their face, it's not clear is he saying, get the gun out of the house or get the clip out of your buddy's house. And then, of course, it's followed shortly thereafter on the transcript, it says laughter. And I think in context, it looks like they could have just been joking around. And what about the question I was asking earlier, do you have a view about what facts, what omitted facts pertaining to staleness we can consider? The brief reference is not just that Lafreda comment, but also statements by the mother, the fact that he moved the picture. As I was looking at the motions on the Franks issue by the defendant, with respect to staleness, it seemed to me that it might have been only Lafreda comment that was actually presented to the district court as a reason to conclude it was now stale. That, Judge Barron, that's my recollection as well. And I know because we provided a short transcript of the relevant passage, but there has not been a transcript made of that entire April 21st conversation. So I have not seen where, at least certainly not in the references in the district court, to where it was asserted that his mother said, you need to get out of the house. And so is that a fact that we cannot consider on this appeal? Yes, that's right. And what about the defendant's contention that since the claim is made, we're supposed to just look at any fact? Are you saying it's just not a fact on the record at all? I, you know, it's more than an hour conversation. And, you know, I, again, it was not transcribed. And so I do not recall anything in the district court. I said the district court would have had that recording. But does it have to be mentioned in the motion? Is there any rules or law about what has to be mentioned in the motion? I think if you're advancing the claim that there was a reckless omission and a deliberate misstatement of an identifiable fact, it has to be brought to the attention of the district court. Thank you. Thank you. I have a question, please. Excuse me. Sorry. Sorry. Thank you. This goes back to the statement in the affidavit was about the past involvement of the CI with drugs. The public defender in its reply brief, it quotes this laudacotically at the frank searing between Kotchin and the public defender asking questions. The comment goes like this. This is referring to the tape on April 21st. And it contains a number of indicators showing that he is, in fact, still using drugs. Correct? Yes. So that should have caused you to doubt his statement earlier that his drug use was in the past. Right? Yes. Because here's some present evidence that he's using drugs. Yes. And he's, in fact, using drugs on a recording with one of the targets of the investigation. Correct? Correct. Yes. I read that to mean that he understands as of the time of that recording and prior to the preparation of the affidavit that he understands that the CI is using drugs and it's a cause of concern to him. But he says nothing in the affidavit about that. I mean, why isn't that a false statement, at least by omission? He's suggesting that the involvement of the CI with drugs is all in the past. But he knows that's not the case. He's worried that on this occasion, on the 21st, he's actually using drugs. Why doesn't that make what he says in the affidavit false by omission? It doesn't, Judge Lopez, because what he testified to at the hearing was after listening to that conversation, at some point, and he doesn't recall when, but at some point, he had a conversation with the CI where he said, because of those concerns, he said, if you're using drugs, stop using drugs, and the ATF has a zero tolerance policy with respect to drugs. And then he also testified, as I said, that as of the time he submitted the affidavit, he believed that the only drug that the defendant was using was Suboxone, and that's consistent with one of the internal suitability reports that he submitted contemporaneously with that. So the district court, after hearing that, acknowledged that he did have concerns, but found that the statement was not recklessly made. And I would point out, too, that it's not just that he used. The statement was that he had reported that he had sold and used drugs in the past. It's not an unreasonable inference. I don't think, in other words, that he had a significant involvement in the drug trade. That, coupled with the statement identifying that he had been involved with law enforcement and had been convicted of an entire disparate group of crimes, I would suggest the magistrate judge wasn't misled into the nature of the CW's criminal past and problems with law enforcement taken as a whole. And, you know, although I don't want to put too much emphasis on that the statement was literally true, that actually was part of the district court's rationale, both with respect to the use of the drug use and the use of the statement information in the past, that one thing that she considered was the fact is, is this an incorrect statement or is the statement itself factually true? And with respect, both the district court gave at least some weight to the fact that the statement itself was factually true. Again, your sort of fallback position is that whatever problems there were with the C.I., even if you exclude from the affidavit all information that's dependent on the C.I., there was still probable cause for the issuance of the warrant. And that's what the district court found, yes. I'm sorry, just one last question and I can tie something up. The fact that there's a gun there is lawful to have a gun. So the fact that there's a gun there, as the recording suggests, is evidence of a crime because of at least some things the C.I. was talking about with respect to the significance of that gun, correct? Well, I think there's that wrong. I think it also ties into the information the C.I. provided about the criminal past of the defendant. And so I guess on that score, is there anything independent of the C.I.'s own statements that supports that aspect of the affidavit or does that depend on the reliability of the C.I. alone? That was the investigation into, I think the C.I. provided, C.W. provided information that the defendant had a criminal past. That was then corroborated by law enforcement. And that was listed in the affidavit. Thank you. I did want to start by returning to Judge Barrett and your question about what was or wasn't briefed below. I did look back at the first brief below, which is the part at Appendix 44 through 45. On 45, there is a discussion that, you know, the fraud warrants him to remove the house. And it says, the recording also reflects that Flurry removed some of his property from the house. And it gives a cite and it says referring to paintings removed from the house. And that's in connection with the staleness argument? Yes. It's in connection with the omissions about the tape. It's a description of the omissions? It's describing part of what's omitted. And it's explaining that because of these omissions, there's a staleness and an excess problem. I do also, you know, the brief below has extensive cites to the recording. Unfortunately, the version used below, there was an omission version that wasn't playable. It has different numbers than the version that we used. But am I right in suggesting that the reference to the mother is not in any of the papers filed below? I did not immediately see it. There is a reference to the CI repeatedly encouraging Flurry to leave and stay with him. On my quick review, I did not see it. But I do think that, you know, the tape was absolutely introduced. The district court said that she had listened to the entire recording. The reports that the agent wrote, all of those were introduced. And when there has been a hearing, all of the evidence, I think, which is in the record, this court is able to consider on de novo review. I did also want to correct a few quick points that the government argued. The CI did not have a prescription for Suboxone. He had told the agent that he was buying it on the street. Additionally- I don't think the government suggested that he did have a prescription. Oh, I may have misheard. I thought that they did. The government, I believe, referenced that the only possible way Flurry could win is if we showed that the agent had deliberately misled. May I finish my- Of course. I do not believe that that's the standard. Recklessness is clearly enough, and it's a preponderance standard. It's not the only possible interpretation is deliberate intention. We don't have to show that high of a burden, unless there are further questions. Thank you. Thank you. Thank you.